**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Janine M. Wallace</u>

    v.                                                  Civil No. 09-cv-173-SM

<u>State of New Hampshire, and</u>
<u>Norman Patenaude</u>

**REPORT AND RECOMMENDATION**

Before the Court is Janine Wallace's complaint (document no. 1). Because Wallace is proceeding both pro se and informa pauperis, the matter is before me for preliminary review to determine, among other claims, whether or not the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1).

<u>Standard of Review</u>

Under this Court's local rules, when a plaintiff commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(1). In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam) (following <u>Estelle v. Gamble</u>,

429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  The court must accept as true the plaintiff's factual assertions, see Erickson, 551 U.S. at 94, and any inferences reasonably drawn therefrom.  See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005).  This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

Wallace's factual allegations are, at best, convoluted and confusing.  Wallace's pleadings are rife with references to sexual abuse and corruption in the Catholic Church, homosexuality and child sexual abuse, although the relevance of all the information provided is not apparent.

Attached to the complaint is a document issued by the State of New Hampshire Board of Nursing ("the Board") entitled "Findings of Fact, Conclusions of Law and Disciplinary Order" ("the Board document").[1]  According to that document, on April 19, 2007, a hearing was held in front of the Board concerning Wallace's status as a licensed registered nurse.  The Board inquiry began in August 2006 when the Board received a complaint from Betty Brown, a Licensed Nursing Assistant who identified herself as a coworker and friend of Wallace's.  Brown told the Board she had concerns for Wallace's emotional stability and her fitness to practice nursing.

According to the Board document, Wallace was terminated from St. Francis Healthcare Center in Laconia on July 8, 2004, allegedly arising out of a sexual harassment charge against Wallace filed by a man named Patrick.  Wallace did not respond to the charges and attempted to return to work on July 20, 2004.  Wallace was then escorted from the building.  That day, Patrick sought a stalking order preventing Wallace from contacting him.  Over the course of the ensuing several months, Wallace initiated

---

[1] Wallace's attachments to her complaint will be accepted as, and considered to be, part of the complaint for all purposes. See Fed. R. Civ. P. 10(c) (written instrument addended to a pleading is a part of the pleading for all purposes).

contact with Patrick several times.  According to the Board document, Wallace continued to contact Patrick, and Patrick's mother, in a number of ways, even buying a house 300 feet from their home.  This resulted in Patrick obtaining a court order in September 2006 to keep Wallace away from him.  Wallace's notations on the Board document indicate that she had a different view of her relationship with Patrick, and that he had sought her help in both overcoming his homosexuality which, Wallace believed, had been caused by childhood sexual abuse by a clergy member, and hiding his sexuality from his mother.

During that same time period, staff at the Belknap County Nursing Home where Wallace worked repeatedly complained to the administration about Wallace's odd and inappropriate workplace behavior, largely having to do with her preoccupation with homosexuality, child sexual abuse and clergy sexual abuse.  Staff reported that this preoccupation was significantly affecting both Wallace's administrative duties and her direct care of patients.

Wallace's notations, added to the copy of the Board document submitted with the complaint, indicate that Wallace disagrees with many of the factual findings made by the Board.  On the Board document, and in her pleadings, Wallace indicates that

Belmont Police Chief Baiocchetti, Bishop John McCormack, and Father Armand Tremblay have conspired against her in an effort to cover-up sexual abuse by clergy.  Wallace appears to believe that this conspiracy has worked its way into the Board of Nursing.

Ultimately, the Board concluded that Wallace's "judgment and emotional state of mind in the workplace pose a threat to pubic safety," and that Wallace was "injecting her personal value system at her places of employment and failing to concentrate on her nursing responsibilities when at work."  The Board revoked Wallace's nursing license.  This action followed, naming as defendants both the State of New Hampshire, presumably in its guise as the State Board of Nursing, and Norman Patenaude, the attorney who prosecuted Wallace's matter before the Board.

As a result of her license revocation, Wallace was entered into the "National Practitioner Data Bank/Healthcare Integrity and Protection Data Bank."  The entry indicated that her nursing license had been revoked indefinitely on April 19, 2007.  The database entry listed the following reasons for the revocation: "[Wallace's] RN license revoked for injecting her personal value system at places of employment and failing to concentrate on nursing responsibilities when at work.  Judgment and emotional

state of mind in workplace poses threat to public safety," "unprofessional conduct," and "unable to practice safely by reason of psychological impairment or mental disorder."

Wallace has submitted with her complaint a copy of an April 14, 2009 letter written by Patenaude to the New Hampshire Attorney Discipline Office in response to a March 2009 grievance Wallace filed against him with that office. Wallace has not supplied a copy of her grievance.

Patenaude's letter indicates that Wallace's March 2009 grievance was identical to one Wallace filed against him in the fall of 2007. Patenaude's letter states that his involvement with Wallace began when a complaint was lodged against Wallace by someone outside of the agency. Patenaude's duties regarding the complaint were to investigate the allegations, present evidence he discovered to the Board at a disciplinary hearing, and make a recommendation regarding sanctions.[2] Patenaude also wrote a letter to Wallace in March 2007 and met with her in his office in preparation for the April 19, 2007 disciplinary hearing.

---

[2]Patenaude states in his letter that he does not ordinarily recommend sanctions to the Board, but did in Wallace's case as he felt that the background and circumstances of Wallace's life merited leniency. The Board did not follow his recommendation, which was for two years with a probationary license and counseling.

Patenaude indicates that, aside from dealing with Wallace's later grievances against him, his involvement with this matter ended when the Board rendered its decision in April 2007.

Patenaude's letter also expresses his distress over what he characterizes as Wallace's "malicious and unfounded attacks upon [his] personal and professional integrity." Wallace has not described any action taken by Patenaude against her, aside from identifying him as the individual who prosecuted her license revocation matter on behalf of the Board.

## Discussion

I. State of New Hampshire

The Supreme Court has held that "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (Eleventh Amendment bars all suits in federal court against states or their agencies); Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006). This bar exists whether the relief sought is equitable or legal. See Pennhurst, 465 U.S. at 100-01; Diaz-Fonseca, 451 F.3d at 33. New

Hampshire has not waived its Eleventh Amendment immunity for actions brought pursuant to 42 U.S.C. § 1983.

Wallace has specifically named the State of New Hampshire as a defendant to this action and, by implication, the State Board of Nursing, a state agency. I find that the Eleventh Amendment bars this suit, and I recommend that the action against the State of New Hampshire, or its agency, be dismissed.

II.  Norman Patenaude

It is not clear precisely what claims Wallace intends to raise against Patenaude in this complaint, although she seems most specifically to be complaining regarding the action of the Board in revoking her license and the placement of her name and revocation information in a national database. While Patenaude was at the revocation hearing, and prosecuted the matter, Wallace does not specifically complain of any action taken by Patenaude. Her concerns appear to arise from the findings, conclusions, and order of the Board itself. Accordingly, as she has failed to allege any facts against Patenaude that suggest his liability in this action, or facts that state any claim against Patenaude upon which relief might be granted, I recommend dismissal of Patenaude from this action.

## Conclusion

For the foregoing reasons, I find that Wallace has failed to name any defendant against whom relief might be granted, and I therefore recommend dismissal of this action. Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:   September 29, 2009

cc:     Janine Wallace, pro se


JM:jba